# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| CLIFTON E. BEAMAN, JR.,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-0752-21-0543-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DATE: April 4, 2024 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Cameron Bonney Evans, Esquire, and Neil Bonney, Esquire, Virginia
　Beach, Virginia, for the appellant.

Lorna Jerome, Esquire, and Edith L. Moore McGee, Washington, D.C., for
　the agency.

Russell E. Booker, III, Esquire, Norfolk, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which
affirmed his removal. For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appellant's petition for review, VACATE the initial decision, and REVERSE the appellant's removal.

## BACKGROUND

The appellant was employed as a GS-8 Lead Firefighter with the U.S. Coast Guard. *Beaman v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0543-I-1, Initial Appeal File (0543 IAF), Tab 5 at 40. On January 16, 2021, K.Q., another Firefighter, returned to work after testing positive for COVID-19. 0543 IAF, Tab 7 at 33-35. The appellant and several other firefighters were concerned that K.Q. was still contagious, because K.Q. was still symptomatic, was not consistently wearing a mask, and allegedly stated that he refused to take a COVID-19 test.[2] *Id.* at 34-35; *Pierce v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0576-I-1, Hearing Recording (0576 HR), dated Dec. 6, 2021 (testimony of the appellant).

That same day, i.e., January 16, 2021, the appellant and two other firefighters, Pierce and Simpson, spoke to their supervisor about their concerns regarding K.Q.'s return. 0543 IAF, Tab 7 at 11, 18-19, 23; *Beaman v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0543-I-1, Hearing Recording (0543 HR), dated Nov. 29, 2021 (testimony of the supervisor). According to the supervisor, the appellant, Pierce, and Simpson threatened to not report to duty for their next shift, i.e., January 18 to January 19, 2021, if K.Q. remained at the fire station. 0543 IAF, Tab 7 at 11; 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor). Specifically, the supervisor claimed that Pierce and Simpson said that they were "tapping out" and that the appellant said that the supervisor "[would not] be the only one not here," referring to the supervisor's upcoming leave. 0543 IAF, Tab 7 at 11; 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor). On January 17, 2021, the appellant and four

---

[2] K.Q. had been medically cleared to return to work. 0543 IAF, Tab 7 at 33-34; *Beaman v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0543-I-1, Hearing Recording (0543 HR), dated Nov. 29, 2021 (testimony of the Fire Chief).

other firefighters, i.e., Pierce, Simpson, Hunt, and McDilda, called out sick for the January 18 to January 19, 2021 shift.  0543 IAF, Tab 7 at 24-25.

The agency conducted an administrative investigation into the five firefighters' "alleged coordination of [a] work stoppage."  *Id.* at 5.  Based on the results of the administrative investigation, the agency removed all five firefighters, i.e., Pierce, Simpson, McDilda, Hunt, and the appellant, effective July 16, 2021, on charges of improper conduct and providing inaccurate information.  0543 IAF, Tab 5 at 44-46, 104-06; *Pierce v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0576-I-1, Initial Appeal File (0576 IAF), Tab 5 at 21-23, 105-07; *Hunt v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0551-I-1, Initial Appeal File (0551 IAF), Tab 5 at 28-29, 53-54; *Simpson v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0570-I-1 (0570 IAF), Tab 5 at 29-32, 54-56; *McDilda v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0582-I-1, Initial Appeal File (0582 IAF), Tab 7 at 21-22, 107-08.

The five firefighters, who were represented by the same attorney, filed separate Board appeals challenging their removals.[3]  0543 IAF, Tab 1; 0551 IAF, Tab 1; 0570 IAF, Tab 1; 0576 IAF, Tab 1; 0582 IAF, Tab 1.  Because the cases involved very similar facts, the administrative judge adjudicated the cases together.[4]  Specifically, she scheduled the testimony of witnesses relevant to all five cases, such as the supervisor, the proposing official, and deciding official, on one single day, and scheduled the testimony for case-specific witnesses, such as the appellants, their wives, and doctors, on five separate days.[5]  0543 IAF,

---

[3] Because the documents and testimony in the record of the other four firefighter cases can be independently found and verified, we take official notice of it.  *See* 5 C.F.R. § 1201.64 (explaining that "[o]fficial notice is the Board's or judge's recognition of certain facts without requiring evidence to be introduced establishing those facts").

[4] The administrative judge did not consolidate the cases.

[5] It is unclear why the appellant testified on the same day as Pierce, and thus, his testimony is located in the record for *Pierce v. Department of Homeland Security*, MSPB Docket No. DC-0752-21-0576-I-1.  0576 HR, dated Dec. 6, 2021.

Tab 13. Then, the administrative judge issued five separate initial decisions sustaining the removals of all five firefighters. 0543 IAF, Tab 33, Initial Decision (0543 ID); 0551 IAF, Tab 32; 0570 IAF, Tab 30; 0576 IAF, Tab 26; 0582 IAF, Tab 32.

The appellant's removal is the only removal before the Board because he is the only firefighter that filed a petition for review—thus, we limit our review to the facts pertinent to his case. As stated above, the appellant was removed based on charges of improper conduct and providing false information. 0543 IAF, Tab 5 at 42, 104-06. The first charge, improper conduct, is supported by three specifications. *Id.* at 104. The first specification claims that on January 16, 2021, the appellant "coordinated an attempted work stoppage when [he] influenced other members of the firefighter team [he led] to call in sick for the [January 18-19, 2021] 48-hour shift. . . ." *Id.* The agency's second and third specifications of the improper conduct charge allege that the appellant participated in an attempted work stoppage by not reporting to work on January 18 and January 19, 2021, as "an expression of [his] discontent with management[]." *Id.*

The second charge, providing inaccurate information, is supported by five specifications. *Id.* at 105. The first three specifications allege that the appellant provided inaccurate information by calling in sick on January 18 and January 19, 2021 (specification 1), and recording sick leave in the agency's time and attendance system for January 18, 2021 (specification 2) and January 19, 2021 (specification 3), when he was "not sick or medically incapacitated." *Id.* at 105. The agency's fourth specification alleges that the appellant provided inaccurate information when he claimed during the administrative investigation that "[he] did not remember saying to [his] supervisor or others that [he was] going to call in sick." *Id.* Finally, the agency's fifth specification alleges that the appellant provided inaccurate information when he stated during the administrative

investigation that "[he] did not recall coordinating an attempted work stoppage by influencing [his] team members to call in sick."[6] *Id.*

In the initial decision in the appellant's appeal, the administrative judge sustained both charges, finding, among other things, that "the appellant planted the seed" and "kicked things off" with regards to the sick-out.[7] 0543 ID at 21-23. Then, the administrative judge denied the appellant's claim that the agency violated his due process rights, finding, in part, that the agency was under no obligation to provide documents to the appellant that were not considered by the deciding official in his removal. 0543 ID at 31-32. Next, she denied the appellant's harmful error claim, finding that there was no evidence the agency used the appellant's approved sick leave against him, violated its policies related to sick leave or COVID-19, or that it failed to provide a safe working environment. 0543 ID at 33-35. Finally, after finding that the agency had established nexus and that removal was within the bounds of reasonableness, the administrative judge affirmed the appellant's removal. 0543 ID at 35-41.

The appellant has filed a petition for review, challenging, among other things, the administrative judge's findings on the merits of the charges, arguing that he presented evidence of incapacitation on January 18 and January 19, 2021, and asserting that he did not coordinate a sick-out, or influence any other firefighter to participate in a sick-out.[8] Petition for Review (PFR) File, Tab 1

---

[6] On review, the appellant objects to the term "work stoppage," arguing that because of the way the fire station was set up, it was impossible to have a complete cessation of operations, i.e., a work stoppage, and thus, the charges cannot stand. Petition for Review (PFR) File, Tab 1 at 9-10. Because we find that the agency failed to prove its charges on other grounds, we need not address the accuracy of the work stoppage term. Nevertheless, in the interest of using precise language, we have chosen to use the phrase "sick-out" in place of "work stoppage," unless quoting the agency's documents.

[7] Although the administrative judge sustained the charges, 0543 ID at 23, she did not explain her findings as it related to the individual specifications, 0543 ID at 21-23.

[8] On review, the appellant also argues that the agency committed harmful error by improperly replacing his supervisor as the proposing official with another manager in order to impose a harsher penalty and that the agency violated his due process rights by failing to provide him with the investigator's notes during the reply period. PFR File,

at 6-11. The agency has responded in opposition to the appellant's petition for review, PFR File, Tab 3, and the appellant has replied to the agency's response, PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

Generally, in an adverse action appeal, an agency must prove its charge by a preponderance of the evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty it imposed is within the tolerable bounds of reasonableness. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 17. Therefore, an agency must prove all of the elements of the substantive offense it charged against the appellant and a failure to do so will cause the Board to not sustain the charge. *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994). Furthermore, the Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001); *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table).

As set forth below, we find that the agency has failed to prove that the appellant committed the misconduct as it alleged. First, we find that the agency has failed to prove by preponderant evidence that the appellant coordinated the sick-out, and thus, specification 1 of the first charge, improper conduct, cannot stand. Then, we find that the agency failed to prove that the appellant was not

_____

Tab 1 at 11-19. Regarding the appellant's harmful error claim, the supervisor testified that he requested to be recused as the proposing official because he felt too closely intertwined with the facts of the cases. 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor). Thus, there is no evidence that the agency ousted the supervisor as proposing official in order to install a proposing official who would impose a harsher penalty, and therefore, we find no harmful error. Next, regarding the appellant's due process claim, we agree with the administrative judge that there is no evidence that the deciding official considered the investigator's notes in removing the appellant, and thus, the agency was under no obligation to provide the appellant with these notes during the reply period. 0543 ID at 31-32. Furthermore, the agency provided the appellant with the notes during discovery, and thus, he had the opportunity to present arguments pertaining to those notes in front of the administrative judge. 0543 IAF, Tab 17 at 59-75.

medically incapacitated on January 18 and January 19, 2021, and therefore, specifications 2 and 3 of the improper conduct charge also cannot stand. Then, we find that, because the agency failed to prove that the appellant was not medically incapacitated or that he was the coordinator of the sick-out, specifications 1, 2, 3, and 5 of the agency's second charge, the providing inaccurate information charge, cannot stand. Finally, we find that the agency has failed to prove that the appellant provided inaccurate information when he claimed not to remember telling his supervisors or others that he was going to call out sick, and thus, specification 4 also cannot stand. Accordingly, because the agency failed to prove any of its specifications, neither of its charges can be sustained, and thus, we order that the appellant's removal be reversed.

Specification 1 of the improper conduct charge (Charge 1) cannot be sustained because the agency did not prove by preponderant evidence that the appellant was the coordinator of the sick-out.

The agency's first specification underlying the improper conduct charge alleged that the appellant "coordinated an attempted work stoppage when [he] influenced other members of the firefighter team [he led] to call in sick for the [January 18 to January 19, 2021 shift] that [he was] scheduled to work as an expression of [his] discontent with management's decision [to allow K.Q. to return to work]." 0543 IAF, Tab 5 at 104. Of the five firefighters removed, the appellant is the only one charged with coordinating the sick-out; the others were simply charged with participating in the sick-out. *Compare id.* at 104-05, *with* 0551 IAF, Tab 5 at 53-54; 0570 IAF, Tab 5 at 54-55; 0576 IAF, Tab 5 at 105-06; 0582 IAF, Tab 7 at 107-08. In other words, the agency charged the appellant as the "ring leader" of the sick-out. 0543 IAF, Tab 5 at 104-05, Tab 7 at 9, 12. Thus, the agency must meet a higher bar, and prove not just that the appellant participated in discussions regarding a sick-out, but was the individual responsible for coordinating the sick-out. Contrary to the administrative judge's findings, 0543 ID at 21-23, we do not find that the agency met this burden.

The agency has presented no evidence, beyond speculation, that the appellant was the individual responsible for organizing the sick-out. 0543 IAF, Tab 7 at 9, 12; 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor). Indeed, it appears that several of the removed firefighters were equally as active as the appellant in the discussions regarding a sick-out. For instance, during the January 16, 2021 conversation, Pierce and Simpson both told their supervisor that they were "tapping out" if K.Q. was allowed to remain at the fire station. 0543 IAF, Tab 7 at 11; 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor). There is no indication that Pierce or Simpson made this comment under the influence, or at the instigation, of the appellant. Indeed, while their supervisor stated that all three firefighters, i.e., Pierce, Simpson, and the appellant, threatened not report to duty, there is nothing in his testimony about the conversation that indicates that the appellant was the leader of the group.[9] 0543 IAF, Tab 7 at 11; 0543 HR, dated Nov. 29, 2021 (testimony of the supervisor).

The agency also relies heavily on a series of text messages sent in a group chat, which included the appellant, Pierce, Simpson, Hunt, and McDilda. 0543 IAF, Tab 5 at 94-100, 104-06. These text messages, most of which were between the appellant, Pierce, and Hunt, refer to the group's discontent with the return of K.Q., and appear to discuss a sick-out. *Id.* at 94-100; 0543 HR, dated Nov. 29, 2021 (testimony of the deciding official). However, these messages do not prove that the appellant was the leader of this sick-out effort.

As noted by the administrative judge, the messages appear to demonstrate that it was Pierce, not the appellant, who was "the most active on the text string and egged everyone on." 0543 ID at 22. For instance, it was Pierce who first

___

[9] To the extent that the agency argues that the appellant's position as the Lead Firefighter influenced the others to participate in the sick-out, the position of Lead Firefighter is not a supervisory role, and thus, the appellant had no supervisory control or influence over his team members. Additionally, the agency has presented no evidence that the appellant used his position as the team lead to improperly influence the other firefighters to call out sick.

confirmed that he would not report to duty, texting "IM OUT BOTH DAYS." 0543 IAF, Tab 5 at 95 (emphasis and spelling in original). It was also Pierce who sent the first text on the day the five firefighters called out, asking "[s]o what's the word?" and then, receiving no response after more than an hour, stating "[s]o two of us are out both days so far. I just called in." *Id.* at 97. It was then Hunt who responded "[d]ropped the bomb. Called out [sick leave]," to which Pierce responded "[t]hree down so far." *Id.* at 97-98. Then, after some discussion between Pierce and the appellant regarding K.Q. working overtime to cover the shifts, Pierce responded "[f]our of us so far." *Id.* at 98-99. The appellant then responded "5" and Pierce replied "[l]ol almost there." *Id.* at 99. While these text messages may establish that the appellant was involved in discussions regarding a sick-out, they do not prove that the appellant coordinated and influenced others to participate in the sick-out.

Although we recognize that the appellant's behavior may very well constitute misconduct, participating in discussions regarding a sick-out was not the basis of the agency's charge. *Id.* at 104-05. The Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices. *Stuhlmacher*, 89 M.S.P.R. 272, ¶ 14; *Rackers*, 79 M.S.P.R. at 276. The agency charged the appellant with coordination of the sick-out, not mere participation in discussions of a sick-out, and the agency is bound by the charge it brought, not one it could have brought. *See Stuhlmacher*, 89 M.S.P.R. 272, ¶ 14 (explaining that the Board will not sustain an agency action on the basis of charges that could have been brought but were not). Therefore, because the agency failed to prove that the appellant committed the misconduct it described in its proposal notice, the first specification cannot be sustained.

Specifications 2 and 3 of the improper conduct charge (Charge 1) cannot be sustained because the agency failed to prove by preponderant evidence that the appellant's failure to report to duty was not the result of medical incapacitation on January 18 and January 19, 2021.

The agency alleges in its second and third specification that the appellant "participated in an attempted work stoppage when [he] failed to report for duty as an expression of [his] discontent with management[]" on January 18 and January 19, 2021, respectively. 0543 IAF, Tab 5 at 104. It is undisputed that the agency approved the appellant's request for sick leave on January 18 and January 19, 2021. 0543 IAF, Tab 7 at 24-25; 0543 HR, dated Nov. 29, 2021 (testimony of the appellant's supervisor). Thus, in order to sustain both specifications, the agency must prove that the appellant's failure to report for duty, while he was on approved sick leave, constituted misconduct. In order to do so, the agency must show that the appellant was actually not entitled to the approved sick leave, i.e., that he was not incapacitated due to an injury on January 18 and January 19, 2021. 5 C.F.R. § 630.401(a) (setting forth requirements for granting sick leave, including incapacitation due to illness or injury).

In the initial decision, the administrative judge sustained the specifications, apparently finding that the appellant's failure to report for duty constituted misconduct because he was not medically incapacitated on January 18 and January 19, 2021. 0543 ID at 20-23. However, as the appellant argues on review, he submitted significant evidence proving that he was incapacitated on January 18 and January 19, 2021, and therefore, that it was proper for him to be on approved sick leave those dates. PFR File, Tab 1 at 6-9. For instance, the appellant presented objective medical evidence, supported by other corroborating evidence, establishing that he was incapacitated for duty on January 18 and January 19, 2021. First, his chiropractor testified that, on January 19, 2021, he treated the appellant for a back injury that the appellant suffered on January 16,

2021,[10] after purportedly falling from a ladder while working on his boat at his house. 0543 HR, dated Nov. 30, 2021 (testimony of the appellant's chiropractor). The chiropractor testified that he performed an examination, which included a series of motion orthopedic tests, and confirmed that the appellant had suffered an injury consistent with a fall. *Id.* He also found no evidence that the appellant was exaggerating or misrepresenting his condition. *Id.* Therefore, based on his medical findings, the chiropractor testified that the appellant was incapacitated for duty on January 18 and January 19, 2021. *Id.*

The chiropractor's testimony is consistent with the medical documentation in the record, which includes the chiropractor's report detailing his medical findings, a copy of the appellant's x-rays, and a medical note from the chiropractor excusing the appellant from work until January 25, 2021, to recover from the accident. 0543 IAF, Tab 5 at 82-91, Tab 24. The appellant's medical evidence is also consistent with other evidence in the record, including a letter from the county's emergency services department, stating that the appellant was also absent from his part-time emergency medical technician position during the same timeframe due to medical reasons. 0543 IAF, Tab 19 at 98. Furthermore, the appellant was on sick leave from his position with the agency until January 27, 2021, using a total of 96 hours of sick leave. 0543 IAF, Tab 7 at 6, 37. However, the agency does not appear to question his use of sick leave after January 19, 2021. 0543 IAF, Tab 5 at 104-06, Tab 7 at 6.

While the appellant has presented significant evidence to support his claims of incapacitation, the agency has presented no evidence that undermines or contradicts the appellant's evidence. While we acknowledge that the agency presented evidence that the appellant was in discussions with the other firefighters regarding a sick-out, such evidence does not prove that the appellant was not also medically incapacitated on January 18 and January 19, 2021.

---

[10] The appellant suffered his injury on January 16, 2021, which was a Saturday, and because January 18, 2021 was a Federal holiday, the appellant did not seek treatment until January 19, 2021. 0576 HR (testimony of the appellant).

0543 IAF, Tab 5 at 94-100. Although the agency was understandably suspicious of the appellant's claims of injury, such suspicions, without more, do not overcome the appellant's evidence of incapacitation. Therefore, the agency did not prove that the appellant's failure to report to duty, when he was on approved sick leave, constituted misconduct, and thus, the second and third specifications of the first charge, improper conduct, cannot be sustained. 0543 IAF, Tab 5 at 104.

In conclusion, the agency has failed to prove the misconduct alleged in any of the specifications underlying its first charge. Accordingly, the first charge of improper conduct cannot be sustained.

Specifications 1, 2, and 3 of the providing inaccurate information charge (Charge 2) cannot be sustained because the agency failed to prove that the appellant was not incapacitated by injury.

The agency alleges in the first three specifications of the second charge that the appellant provided inaccurate information by calling out sick (specification 1) and recording sick leave in the agency's time and attendance system (specifications 2 and 3) for January 18 and January 19, 2021, when the appellant was "not sick or medically incapacitated." *Id.* at 105. Thus, to prove all three of these specifications, the agency must establish that the appellant was "not sick or medically incapacitated" on January 18 and January 19, 2021. *Id.* As we have discussed in length above, the agency failed to prove that the appellant was not medically incapacitated on January 18 and January 19, 2021, and thus, specifications 1, 2, and 3 cannot be sustained.

Specification 5 of the providing inaccurate information charge (Charge 2) cannot be sustained because the agency failed to prove the appellant coordinated the sick-out.

We address the fifth specification of the second charge, before the fourth specification, because our previous finding that the agency did not prove that the appellant coordinated the sick-out directly influences our finding here. Specifically, the agency's fifth specification alleges that the appellant provided

inaccurate information when he stated, during the administrative investigation, that he "did not recall coordinating an attempted work stoppage by influencing [his] team members to call in sick." *Id.* In order to prove this specification, the agency must prove that the appellant coordinated the sick-out. As discussed in detail above, the agency failed prove that the appellant coordinated and influenced others to participate in a sick-out. Therefore, specification 5 cannot be sustained.

<u>Specification 4 of the providing inaccurate information charge (Charge 2) cannot be sustained because the agency failed to prove that the appellant provided inaccurate information.</u>

In the fourth specification, the agency alleges that the appellant provided inaccurate information when he claimed during the administrative investigation, that "[he] did not remember saying to [his] supervisor or others that [he was] going to call in sick."[11] *Id.* As we have stated, the Board adjudicates the charge as it is described in the agency's proposal and decision notices. *Rackers*, 79 M.S.P.R. at 276. Because of the manner in which the agency chose to draft this specification, it is not sufficient to prove that the appellant told his supervisor and others that he was going to call in sick. Instead, the agency must prove that the appellant's statement that he "did not remember" doing so was inaccurate. 0543 IAF, Tab 5 at 105. Thus, because of its language choices, the agency is required to prove the mental state of the appellant, specifically, whether he was being truthful when he stated that he did not remember a statement he made several months earlier. The agency failed to introduce any evidence regarding the appellant's mental state during the interview, or any evidence that demonstrates that the appellant did, in fact, remember telling his supervisor and others that he was going to call in sick. Therefore, specification 4 cannot be sustained.

---

[11] The appellant claims that, during his interview in the administrative investigation, he denied that he told his supervisors or others that he was going to call out sick. PFR File, Tab 1 at 15. Even assuming arguendo that the appellant denied making this statement in the interview, the specification would still not stand, as the agency would not have proven the charged misconduct.

The agency has failed to prove the underlying specifications of either charge, and thus, its charges of misconduct against the appellant cannot be sustained. Accordingly, the appellant's removal is reversed.

## ORDER

We ORDER the agency to cancel the removal action and to restore the appellant to his GS-8 Lead Firefighter (Hazmat Technician/Basic Life Support) position effective July 16, 2021. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not

fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[12]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13]  The court of appeals must <u>receive</u> your petition for

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195,

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                                Gina K. Grippando
                                                Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.